FILED

OCT 09 2019

Clerk, U.S Courts
District Of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| HELENA HUNTERS AND ANGLERS ASSOCIATION, and MONTANA WILDLIFE FEDERATION,<br><br>Plaintiffs, and<br><br>ALLIANCE FOR THE WILD ROCKIES, and NATIVE ECOSYSTEM COUNCIL<br><br>Consolidated Plaintiffs,<br><br>vs.<br><br>LEANNE MARTEN, in her official capacity; UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>Federal Defendants, and<br><br>STATE OF MONTANA, and MONTANA BICYCLE GUILD<br><br>Defendant-Intervenors | CV 19–47–M–DLC<br><br>(Consolidated with Case No. CV 19–106–M–DLC)<br><br>ORDER |

On August 13, 2019, Plaintiffs Alliance for the Wild Rockies ("AWR") and Native Ecosystem Council ("NEC") filed a Motion for Preliminary Injunction/Temporary Restraining Order (Doc. 24) supported by the declaration of

Michael Garrity, the Executive Director of AWR. (Doc. 24-1.) For the following reasons, Plaintiffs' Motion will be denied.

## BACKGROUND

At issue is the United States Forest Service's Tenmile-South Helena Project ("Project" or "Tenmile Project") on the Lewis and Clark National Forest. The Project is a vegetation management project that the Forest Service developed to protect the City of Helena's municipal watershed and to improve conditions relative to forest fire. This Project is underway. The Forest Service began vegetation treatments in May of 2019 after awarding two salvage sales in March 2019.

Plaintiffs assert that the Tenmile Project is unlawful because the Fish and Wildlife Service ("the Service") failed to include a "detailed discussion of the effects of the action" on grizzly bears in its Biological Opinion as required under the Endangered Species Act ("ESA"). Plaintiffs also contend that the Tenmile Project violates the National Forest Management Act because Project implementation will increase road density levels above those authorized in the Forest Plan to the detriment of grizzly bears.

## DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). Generally, a

petitioner seeking an injunction must show that (1) it is likely to suffer irreparable harm absent a preliminary injunction, (2) it is likely to succeed on the merits, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 20.

However, in ESA cases, the test is altered so that "the equities and public interest factors always tip in favor of the protected species." *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1091–91 (9th Cir. 2015). Accordingly, the Court is satisfied that the balance of equities and public interest accrue in favor of a preliminary injunction in this ESA case. The Court will proceed to discuss whether Plaintiffs are likely to suffer irreparable harm absent a preliminary injunction.

This showing requires a petitioner to allege more than the mere possibility of harm; they must demonstrate that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. Additionally, analysis of this element inquires into the timeframe of the litigation. A court must determine that a preliminary injunction is required to prevent the harm that will otherwise occur before the court is able to reach a conclusion on the merits. *Id.* at 21.

Plaintiffs allege that their members will suffer irreparable harm to their ability to "view, experience and utilize the area in [its] undisturbed state" if the Project is allowed to continue for the next few months. (Doc. 25 at 13.) They

contend that the "area will be irreversibly degraded because once logging and burning occurs, the Forest Service cannot put the trees back on the stumps or unburn the trees[.]" (*Id.*)

Federal Defendants argue that this allegation of harm is insufficient because: (1) Plaintiffs' claim is undermined by their delay in filing this motion; (2) Plaintiffs fail to allege any harm to an ESA-listed species; and (3) Plaintiffs' concerns regarding the trees are unconvincing given that the Project primarily targets dead or dying trees. (Doc. 36 at 15–19.)

Turning to the first argument, Federal Defendants contend that Plaintiffs' months-long delay in filing suit and further delay in seeking a preliminary injunction until Project activities were well underway should be construed to undercut their claim of imminent harm. (Doc. 36 at 15.) Indeed, numerous courts have considered a delay to weigh against finding imminent irreparable harm. *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm[.]"); *Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief.").

Plaintiffs assert that the delay was due to difficulty in finding competent legal counsel and any delay here is not comparable to the cases cited above

because this delay was a matter of months, whereas in those cases, the delay was measured in years. (Doc. 40 at 7.) The Court is not convinced that the overall length of delay is dispositive.

Here, the entire timeline of this litigation is on a smaller scale. In early March 2019, the Forest Service advertised both the Scotty Salvage and Upper Tenmile Salvage timber sales and mailed a copy of the advertisement to Plaintiffs. Being experienced environmental litigants, Plaintiffs should have known of the Project and its impending timeline in the spring. Ground operations began in late June and early July. Although Plaintiffs could have filed suit when Helena Hunters did in mid-March (*see* Doc. 1), they waited three months to file (*see* Doc. 16 at 3), and then another two months to seek emergency relief (*see* Doc. 24). The delay of even a few months—significant months in terms of project implementation—is a significant delay in the life of a timber sale operation. While the Court is sympathetic to NEC's claim that it had difficulty finding counsel (Doc. 40-2 at 4), this difficulty does not negate the impression that if the need for a preliminary injunction had been deemed essential in the spring, counsel could have been found.

The difference between the Court's view of the situation here and the decision reached in *Native Ecosystems Council v. Marten*, 334 F. Supp. 3d 1124 (D. Mont. 2018) (where this Court overlooked the plaintiffs' ten-month delay when

the project was set to begin on July 1, 2018 and the plaintiffs did not file until two weeks before) is simple: there the plaintiffs did, in fact, file before the project had begun, and filed before the bulk of the seasonal work had begun. Here, Plaintiffs filed at the conclusion of summer after the Project was well underway. The Court's decision to halt the project now while the parties complete briefing on their motions for summary judgment would only prevent that work scheduled for the final weeks before snowfall brings much of the Project to its seasonal intermission.

Delay alone, however, is not enough to deny Plaintiffs' motion. *See Lydo Enterprises, Inc*, 745 F.2d at 1213 (construing a delay as merely one factor in a larger analysis); *see, e.g., Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (noting the delay but resolving the issue on other grounds). Federal Defendants next argue that Plaintiffs cannot meet the standard for a preliminary injunction because they have failed to allege that irreparable harm will befall the grizzly bear before the court can issue its decision. (Doc. 36 at 19 (citing *Native Ecosystems Council v. Krueger*, 40 F. Supp. 3d 1344, 1349 (D. Mont. 2014) (noting that plaintiffs had not alleged any harm to wildlife) and *Idaho Rivers United v. U.S. Army Corps of Eng'rs*, 156 F. Supp. 3d 1252, 1261 (W.D. Wash. 2015) (noting that a preliminary injunction premised on an ESA claim required the plaintiffs to "demonstrate a likelihood of irreparable harm to the Pacific lamprey").) Plaintiffs argue that demonstrating harm to the species is not a prerequisite for a preliminary

injunction and that the Ninth Circuit has upheld an injunction on the same harms alleged in this case. (Doc. 40 at 6–7.)

Plaintiffs are correct that there is nothing inherently insufficient in an aesthetic injury like the one advanced here. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In *Cottrell*, the Ninth Circuit determined that AWR had demonstrated that its members' ability to "view, experience, and utilize" the forest in its undisturbed state would be irreparably harmed in the absence of an injunction. *Id.* However, *Cottrell* was not an ESA case. *See id.* at 1129–30.

It is also true that this Court has not always required a plaintiff to specifically assert an injury to the species in order to satisfy the irreparable harm requirement. *E.g., All. for Wild Rockies v. Marten*, 253 F. Supp. 3d 1108, 1111 (D. Mont. 2017). In *Marten*, this Court found that AWR's members' "recreational, scientific, spiritual, vocational and educations interests" in viewing "the area in its undisturbed state" would be harmed absent an injunction when the claim for relief arose under the ESA. *Id.* at 11110–11. However, preventing harm to lynx and their critical habitat was a chief reason the Court granted the injunction. *Id.* at 1115. The Court specifically noted that "the entire Project area is within designated occupied and core lynx habitat, as well as lynx critical habitat . . . . Because this Project is located at the heart of lynx habitat, any revisions to the

Lynx Amendment resulting from consultation could have profound repercussions upon the species." *Id.*

As these cases illustrate, the irreparable harm inquiry is flexible as "environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e. irreparable." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014) (quoting *Lands Council v. McNair*, 537 F.3d 981, 1004 (9th Cir. 2008) (en banc)). The Ninth Circuit has "never made a rule that a plaintiff must challenge all related harms to maintain an ability to challenge the harm that it views as the most serious." *Id.* at 765 (finding an irreparable harm to the members' interest in the project area where an injunction was necessary to stop the "logging of thousands of mature trees" in an ESA case). Nevertheless, the harm prevented by entry of a preliminary injunction must legitimately relate to the legal theory asserted in a case. *Garcia*, 786 F.3d at 744; *Krueger*, 40 F. Supp. 3d at 1348–39.

Here, Plaintiffs assert that an injunction is necessary to prevent logging so that its members may enjoy the forest in a natural state. Plaintiffs do not allege that the Project will irreparably harm their members' ability to view or enjoy grizzly bears in the Project area. *Cf. Rockies v. Marten*, No. CV–15–99–M–BMM, 2016 WL 6901264, at *6 (D. Mont. Nov. 22, 2016) (finding irreparable harm

under an ESA claim where plaintiffs asserted an injury to their members "interests in looking for, viewing, studying, and enjoying . . . lynx"). Plaintiffs do not assert that grizzly bears or their habitat are likely to be irreparably harmed if the Project is allowed to continue during the pendency of this litigation.[1] Nor can the Court find evidence of irreparable harm to the species, given that the Tenmile Project is located in a grizzly bear linkage zone (which is critical to the species survival in the long term) but the Project's impacts are alleged to cause only short term disruption. (Doc. 25 at 19.)

Finally, because the Project primarily targets dead or dying trees, the irreparable harm asserted in this case—that "once logging and burning occurs, the Forest Service cannot put the trees back on the stumps or unburn the trees"—is not overly compelling. At this point, an injunction would only prevent the Forest Service from doing what will occur through natural forces in the next few years. (Doc. 36 at 19.)

In this case, the Court cannot find an allegation of irreparable harm that is consistent with the legal theories asserted. Plaintiffs have, at best, alleged only the

---

[1] Plaintiffs have already filed their motions for summary judgment. (*See* Docs. 43 and 55). Federal Defendants cross-motion and response to Plaintiffs' motions are due on November 15, 2019. (Doc. 20.) Plaintiffs' consolidated response and reply is due on December 20, 2019. (*Id.*) This matter will be fully briefed and ready for a hearing by January 17, 2020. (*Id.*) All of this is to say that the Court will render its decision before work begins again in the spring.

possibility of harm, which is not sufficient for this Court to issue the "extraordinary remedy" that is a preliminary injunction.

Having found that Plaintiffs fail to establish a likelihood of irreparable harm, the Court need not address the remaining factor. *Garcia*, 786 F.3d at 746.

IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction (Doc. 24) is DENIED.

DATED this 9th day of October, 2019.

Dana L. Christensen, Chief Judge
United States District Court