IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

FILED
APR 24 2020
Clerk, U.S. District Court
District Of Montana
Missoula

| | |
|---|---|
| HELENA HUNTERS AND ANGLERS ASSOCIATION, and MONTANA WILDLIFE FEDERATION,<br><br>Plaintiffs, and<br><br>ALLIANCE FOR THE WILD ROCKIES, and NATIVE ECOSYSTEM COUNCIL<br><br>Consolidated Plaintiffs,<br><br>vs.<br><br>LEANNE MARTEN, in her official capacity; UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>Federal Defendants, and<br><br>STATE OF MONTANA, and MONTANA BICYCLE GUILD<br><br>Defendant-Intervenors | CV 19–47–M–DLC<br><br>(Consolidated with Case No. CV 19–106–M–DLC)<br><br>ORDER |

On March 18, 2020, the Court held a hearing on the parties' cross motions for summary judgment. At the hearing, the Court questioned whether disputed facts precluded summary judgment. Although a court reviewing a Forest Service action is typically limited to review of the administrative record, *Native*

-1-

*Ecosystems Council v. Marten*, 334 F. Supp. 3d 1124, 1129 (D. Mont. 2018), the Court's review of these claims is not limited so. As indicated at the hearing, the Court will grant the motion of Helena Hunters and Anglers Association and Montana Wildlife Federation (collectively "Helena Hunters") to supplement the administrative record.[1] (Docs. 54, 95.) Helena Hunters has raised an inference of bad faith that warrants the Court's consideration of otherwise extra-record evidence. Now, the issue is whether the evidence supports granting summary judgment to either party. For the reasons explained below, the Court believes questions of fact preclude summary judgment at this time. This order pertains only to Helena Hunters and Federal Defendants.

## DISCUSSION

Helena Hunters argues, inter alia, that the Forest Service violated the Roadless Rule, the National Environmental Policy Act ("NEPA"), and the Administrative Procedure Act ("APA") when it authorized the use of mechanized logging within the Lazyman Gulch Inventoried Roadless Area ("IRA") pursuant to the Tenmile South-Helena Vegetation Project ("Tenmile" or "Project") Record of Decision. (Doc. 55.) Specifically, Helena Hunters argues that the Forest Service violated the Roadless Rule because its use of mechanized logging equipment

---

[1] The Court will fully address these motions in its order ruling on the parties' cross motions for summary judgment.

-2-

requires the agency to construct (or reconstruct) approximately 14 miles of temporary road with the Lazyman Gulch IRA, despite the agency's assurances to the contrary. (Doc. 56 at 17.) Helena Hunters also argues that the Forest Service's plan to construct 14 miles of temporary road—which was proposed after it issued the Tenmile draft environmental impact statement ("EIS")—was a substantial change from the alternatives proposed in that draft such that the Forest Service violated NEPA by failing to prepare a supplemental draft EIS. (*Id.* at 27–32.)

Federal Defendants steadfastly insist that no road construction (or reconstruction) is intended or necessary in the roadless area because the Forest Service will utilize 14 miles of existing routes and only small equipment (such as a track forwarder and UTV) capable of primitive travel along these routes. (Doc. 65 at 25–26.) The Forest Service insists that it can use existing routes in their current condition, although it might need to remove some debris such as "rocks and downed trees[.]" AR 009185. Elsewhere, the Tenmile final EIS asserts that "no treatment" is needed of these routes, not even maintenance. *See* AR 007007.

Helena Hunters claims that the routes indicated by the Forest Service in its "Transportation Plan and Route Closure Methods Map" are historic mining roads and two tracks, many of which are more than a hundred years old, and that decades of non-use have left these roads barely visible on the landscape. (Doc. 56 at 20–21.) In short, Helena Hunters disputes that these routes currently exist.

Ordinarily, the type road treatment necessary to bring heavy mechanized equipment[2] along a primitive forest road—a matter within the Forest Service's area of expertise—is a fact that would require the Court's deference. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 798 (9th Cir. 2005). Here, however, Helena Hunters argues that the Forest Service has engaged in bad faith. (Doc. 54 at 5.) Helena Hunters asserts that the Forest Service has minimized the road work necessary for the Project, concealed the current condition of hundred-year-old mining roads and two-tracks, and misled the public by claiming that the Project will close existing routes when its true intent is to construct (or reconstruct) temporary roads and then close these roads at project completion. (Docs. 56 at 23, 78 at 10–17.) In support of its claim, Helena Hunters submits the declaration of Gayle Joslin, a retired wildlife biologist, who spent more than twenty years working specifically in the Lazyman Gulch area. (Doc. 54-1 at 1–3.) Joslin was skeptical of the Forest Service's claim that existing routes could be used to access the area. (*Id.* at 7–8.) With her GPS device and camera, Joslin located and documented the current on-the-ground conditions of these routes. (Doc. 54-1.)

Joslin's declaration demonstrates that many of the historic roads have been

---

[2] Although the Court disagrees with Federal Defendants' characterization of a track forwarder as a small vehicle, characterization is not at issue. What matters is the vehicle's size, weight, turning radius, and ability to navigate steep terrain. *See, e.g.,* U.S. Forest Serv., *Smallwood II*, https://www.fs.fed.us/t-d/programs/forest_mgmt/saleprep/smallwood/Forwarders.pdf.

reclaimed by nature. Some of her photographs show old roadways populated with young growth. (*See* Doc. 54-1 at 9, 13 (Road No. 4000-NS01, Road No. 4000-NS04).) Another depicts a clearing that abuts a dense stand of mature growth with no discernible path through the trees. (*See id.* at 12 (junction of Road No. 4000-001, Road No. 4000-NS01, and Road No. 4000-NS04).) Yet another depicts a narrow convex trail way with roots and downed trees intersecting its path. (*See id.* at 14 (Road No. 4000-NS04).) On whole, Joslin's declaration adequately conveys that these routes—although faintly sketched onto the landscape—appear to meet the Project's proposed closure methods in their current condition.

Thus, the Court views the question posed by Helena Hunters, whether these routes currently exist on the landscape and are accessible by heavy mechanized equipment with "no treatment," AR 007007, as a question of disputed fact. At the hearing, Helena Hunters argued that the Court could resolve the issue by reaching the legal conclusion that the Forest Service's failure to justify its decision with information regarding the baseline condition rendered its decision arbitrary and capricious. However, the Court does not share this view.

The agency's duty to document the baseline condition arises under NEPA and goes to the question of whether the Tenmile EIS is satisfactory. *Oregon Natural Desert Ass'n v. Rose*, 921 F.3d 1185, 1190 (9th Cir. 2019). This is a question about the agency's procedural duty. *High Sierra Hikers Ass'n v.*

*Blackwell*, 390 F.3d 630, 639–40 (9th Cir. 2004). Whether the agency violated the Roadless Rule is a substantive question. The Court cannot conclude that the agency's purported procedural violation (its failure to document the baseline condition) means that it violated its substantive obligation not to construct (or reconstruct) roads in a roadless area. Although the one does not necessarily follow the other, resolving the disputed road question is necessary to both legal issues.

If the existing roads are, in fact, too primitive for the Forest Service to navigate by track forwarder or UTV (without any "maintenance" or construction), *see* AR 007007, 66 Fed. Reg. 3244, 3273 (Jan. 12, 2001), not only will Helena Hunters most likely prevail in its Roadless Rule challenge, but this fact also provides compelling evidence that alternative four presented a substantial change from the previous action alternatives requiring NEPA supplementation. *Russell Country Sportsmen v. U.S. Forest Serv.*, 668 F.3d 1037, 1045 (9th Cir. 2011). On the other hand, if these routes are currently passable by heavy machinery, then the Forest Service arguably did not violate the Roadless Rule and alternative four's proposal to use mechanized logging instead of hand methods is likely a minor deviation that did not require a supplemental draft.[3]

Although Joslin's declaration casts considerable doubt on the agency's

---

[3] For the purposes of this order, the Court takes no position on whether the other activities proposed in alternative four required a supplemental draft EIS.

-6-

position, it does not establish that it is impossible—or even impractical—for the Forest Service to take heavy equipment into the roadless areas on the routes indicated. *See* AR 009522. Whether these routes are passable (with only minor debris removal) is one of the questions of disputed material fact that preclude summary judgment at this juncture.

In addition, the Court does not know what make and model of track forwarder/s the Forest Service intends to take into the roadless area. What is the vehicle's size, width, and turning radius? Will it travel on each of the existing routes in the Lazyman Roadless Area or only some of them? When it comes to the historic roads and two-tracks, the Court does not know the approximate width of these routes and whether any standing trees would need to be cut to clear them. Are the steeper sections of these roads navigable by track forwarder? Can logging equipment navigate these roads without disturbing their soils? What is the current condition of Road No. 527 and Road No. 4782-003?[4] Although answering each of these questions may not be necessary, the Court believes further development of the factual record along these lines is necessary to resolve these issues.

The record can be developed in three ways: (1) the parties could stipulate to

---

[4] The administrative record contains evidence that a Forest Service employee tasked with "displaying" the road work in the Lazyman Gulch IRA seemed to believe that certain roads required reconstruction. *See* Email from Mary Smith, U.S. Forest Service to Elaina Graham, U.S. Forest Service, Notes on ROD Transportation Layer (Dec. 07, 2017 12:32 p.m. MTN) (copy on file with Forest Service). This email chain was submitted to Helena Hunters on a separate USB drive from the Bates-stamped record.

-7-

facts relevant to the questions outlined above; (2) the parties could submit relevant affidavits providing greater detail on this issue; or (3) the Court can hold a hearing and make factual findings. This hearing would be held as soon as is practically possible in light of COVID-19 restrictions. Accordingly,

IT IS ORDERED that Helena Hunters and Federal Defendants shall confer and notify the Court by May 8, 2020 whether the parties intend to stipulate to facts, submit affidavits, or whether a hearing will be necessary to resolve disputed issues. If the parties intend to stipulate or submit separate affidavits, the parties should propose an agreed upon deadline for filing these documents.

DATED this 24th day of April, 2020.

Dana L. Christensen, District Judge
United States District Court